Argued December 9, 1936; reversed January 26, 1937

# RHOTEN v. DAIRY COOPERATIVE ASSOCIATION

(64 P. (2d) 523)

Department 2.

*R. R. Bullivant,* of Portland (Clark & Clark, of Portland, on the brief), for appellant.

*George A. Rhoten,* of Salem, for respondent.

RAND, J. The plaintiff brought this action to recover an alleged balance claimed to be due and owing him for milk sold and delivered to the defendant between October 1, 1933, and January 1, 1935. The case was tried to the court below without a jury and resulted in a judgment for plaintiff, from which the defendant has appealed

The defendant is a nonprofit corporation having neither stockholders nor capital stock and was organized and operates under and pursuant to the provisions of Chapter VIII, Title XXXV, Oregon Code 1930. By its articles of incorporation, it is authorized to purchase milk, cream and other dairy products from its members and to sell and dispose of the same either in a natural or manufactured state, and to prorate among 'its members, according to the volume of milk furnished, all sums received from such sales less five per cent which is to be retained by the association to cover its overhead and costs and expenses of marketing the products. It is bound to accept from all its members all the milk and cream delivered in proper condition, and they are each bound to furnish to the association all milk and cream produced by them not required for personal use, or some specified proportion thereof. It has a large number of members, all of whom are producers of milk and cream, and, upon ceasing to be producers, they cease to be members of the association. The operations of the association extend from Salem, Oregon, to Vancouver, Washington, and its principal office is located in Portland.

During all the time mentioned in the complaint, the plaintiff was a member of the association and, like all other members, he was required to enter into a contract in writing in which he stipulated and agreed "to abide by its by-laws and articles of association, which by-laws and articles of association are hereby made parts of this contract". At the time plaintiff became a member of the defendant association, he was the owner of a farm in the vicinity of Salem and was under a contract with one G. B. Bowman, which, by its terms, gave to Bowman the right to receive one-half of all proceeds realized from the sale of the milk

produced on the farm and, upon its termination, obligated the plaintiff to transfer and deliver to Bowman one-half of all the cattle composing the dairy herd. The contract was terminated on or about October 1, 1933, and at that time plaintiff transferred and delivered to Bowman one-half of all said cattle. Prior thereto, Bowman, because of his interest in said herd, had become a member of the association and had been paid by plaintiff one-half of the proceeds derived from the sale of the milk and, after the division of the herd, continued to be such member and separately sold and delivered to the association the milk produced by the cows so sold and delivered to him by the plaintiff. Plaintiff likewise continued to deliver to the association the milk produced from his half of the cows and these deliveries, upon his part, continued up to the first day of January, 1935, when plaintiff terminated his membership in the association and ceased to make deliveries.

For the milk so delivered by plaintiff to the association, payments were made and accepted by plaintiff twice each month during all the times mentioned in the complaint. Plaintiff contends, however, that each of the amounts so paid to him was less than what he was entitled to receive and bases this contention upon the claim that he was entitled to have the price of the milk sold computed upon the basic average that would have been used to make such computation had the herd not been divided. In other words, he now contends that, for approximately one-half of the milk delivered to the association, he should receive a higher price than he would have received for his share of the milk if the herd had not been divided.

Upon the division of the herd between plaintiff and Bowman, the association divided the basic average

that had been established in accordance with the volume of milk produced by the whole herd into two equal parts, giving to plaintiff the benefit of one-half thereof and to Bowman the other half. This was in accordance with the by-laws of the association and resulted in a combined payment of the same sum to plaintiff and Bowman for the milk subsequently separately delivered by them that would have been paid to them for the same quantity of milk had the herd not been divided and would result, if it could be sustained, in a higher price being paid to plaintiff than that paid to any other member of the association similarly situated.

It is impossible to state from the evidence offered just how the price to be paid for milk deliveries to the association is computed upon the basic average of the various members of the association. The plaintiff, however, makes no contention that this method of computation is unjust or unfair nor does he contend that, if the division between him and Bowman of such basic average was authorized and proper, he has not been paid in full for his milk.

Under plaintiff's contract with the association he had agreed ''to abide by its by-laws and articles of association, which by-laws and articles of association are hereby made parts of this contract''. One of the provisions contained in his contract with the association is as follows:

''The Producer agrees to give written notice immediately to the Association upon any sale or lease of his farm, or herd, or at any time he gives up the production or control of dairy products. His failure to give such notice shall make the Producer liable to the Association for liquidated damages, if his transferee or mortgagee shall fail to deliver said dairy products to the Association.''

Under this express stipulation of the contract, the plaintiff was bound to give immediate notice to the defendant when he transferred one-half of his herd to Bowman. He gave no notice of the transfer whatever and, if Bowman had failed to continue to make deliveries of the milk produced by the cows transferred to him, plaintiff would have been liable to the association for the damages specified in the contract which are 12½ cents per pound of butterfat contained in the milk not delivered. Bowman's subsequent delivery of the milk discharged the plaintiff from that liability. Plaintiff, therefore, ought not to be permitted to complain that Bowman received his proportionate part of what would have been received by both if the herd had not been divided and both of them had participated in delivering the milk, and he can base no right of action thereon. Nor can plaintiff complain because of the division made by the association of the basic average nor of the fact that the association transferred one-half thereof to Bowman without notice to plaintiff. The articles of association expressly provide that the membership "shall be transferable only to purchaser or lessee of the member's herd", while the by-laws provide that any bona fide producer of milk, in any territory served by the association, may become a member of the association, subject to the approval of the board of directors, and upon entering into the agreement above referred to. They also provide that the association shall issue a certificate of membership to the applicant and that "such certificate of membership shall be transferable only to purchasers of lessees or member's herd".

Under these provisions and under his contract with Bowman, the plaintiff had no separate ownership of the basic average that had been established by their joint

delivery of milk and he was deprived of no right when the association transferred one-half thereof to Bowman. Under the whole evidence in the case and giving full effect to every fact testified to by the plaintiff, or by any other witness in the case, the plaintiff is not shown to be entitled to recover any sum of money whatever from the defendant.

For these reasons the judgment entered in the lower court will be reversed and the cause will be remanded to that court with directions to dismiss the action, and it is so ordered.

BEAN, C. J., and BAILEY and BELT, JJ., concur.